of selling Sedona common stock, either through an account held by AMRO or an account held by an SPV, or a combination of such accounts. Accounts appear to have been chosen based on the fees charged for the use of the accounts and/or the performance of the brokerage house in executing trades and obtaining the best price during any given day. Transfers of shares between different accounts occurred from time to time in order to cover a short position in an account, which transfers are illustrated in Exhibit D. For the most part AMRO and the SPV's maintained a cumulative short position in Sedona common stock, as is demonstrated in the column titled "Cumulative Quantity Total" in Exhibit D. Rhino, through AMRO's account or the account of an SPV or a combination of such accounts would increase their cumulative short position in Sedona common stock over time and then cover that short position either with shares issued upon a conversion of an outstanding convertible instrument or shares received in connection with a shelf offering by Sedona to Roseworth Group Limited. This short selling activity was carried out notwithstanding a contractual covenant against short sales in the transaction documents relating to the issuance of Sedona convertible securities. On February 14, 2002, Sedona, Rhino and Rhino's clients entered into a settlement agreement and various general releases with respect to any claims either party may have had against the other in connection with such transaction documents or trading in Sedona's common stock generally. It does not appear that Rhino ever departed from this strategy of selling and covering Sedona common stock. However, on at least one occasion, Michael Mulshine, a director of Sedona, approached Rhino in an effort to enlist Rhino's clients to assist him in raising the price of Sedona's common stock above $1. Nothing in the documents demonstrates that Rhino or Rhino's clients acted upon such request and altered its strategy from selling to buying in an effort to raise Sedona's stock price.

EXHIBIT-0047-00 87

SEC-BADIAN-00022837

## Question No. 9

Describe the complete corporate history of Rhino, including, but not limited to, date and place of incorporation, incorporators, and all registered agents. Identify all current and former Rhino shareholders, officers, directors and employees. If any shareholder is an entity, identify that entity's shareholders, officers, directors and employees. For each employee or officer (from start date to present) describe their: (a) title, job description and responsibilities; (b) their home and business addresses and telephone numbers; and (c) their annual compensation, including, but not limited to, salary, bonuses, stock options and awards.

## Answer No. 9

Rhino was incorporated in New York on or about January 12, 2000. I was the sole incorporator. Pursuant to my consent as the sole director and shareholder, on January 14, 2000, Thomas Badian was elected as president of Rhino, and I was elected as secretary of Rhino. Pursuant to my consent on January 16, 2000, I was removed as secretary of Rhino, and Thomas Badian was elected as secretary of Rhino. From January 16, 2000, to the present, Thomas Badian has continuously served as president and secretary of Rhino. Gregory Mussa is Rhino's sole shareholder, holding 100 shares of common stock.

Rhino's former and current employees, directors, and officers are listed below along with their title, job description responsibilities, address, telephone numbers, and annual compensation from Rhino:

| **Rosa Alaimo** | |
|---|---|
| Start/end date: | 5/7/01 to present |
| Title: | Executive Assistant and Office Manager |
| Job Description: | See title above |
| Home address/phone number: | 58 Adrianne Lane, Staten Island, NY 10303, (718) 370-7326 |
| Business address/phone number: | 130 W. 29th Street, New York, NY 10001-5312, (212) 594-6555 |

EXHIBIT-0047-00 88

SEC-BADIAN-00022838

| Annual compensation from Rhino: | $37,471.16 (2001) |

| **Richard Austin** | |
|---|---|
| Start/end date: | 1/1/02 to present |
| Title: | none |
| Job Description: | Buys antiquities for investment |
| Home address/phone number: | 327 W. 21st Street, #1E, New York, NY 10011 |
| Business address/phone number: | 130 W. 29th Street, New York, NY 10001-5312, (212) 594-6555 |
| Annual compensation from Rhino: | unknown |

| **Andreas Badian** | |
|---|---|
| Start/end date: | 6/30/00 to 4/30/01, 9/1/01 to present |
| Title: | Trader |
| Job Description: | See title above |
| Home address/phone number: | 305 W. 13th Street, Apt. #3b, New York, NY 10014, (212) 675-3445 |
| Business address/phone number: | 130 W. 29th Street, New York, NY 10001-5312, (212) 594-6555 |
| Annual compensation from Rhino: | $19,999.98 (2000); $27,530.05 (2001) |

| **Thomas Badian** | |
|---|---|
| Start/end date: | 1/13/00 to present |
| Title: | Investment Manager/President |

EXHIBIT-0047-00 89

SEC-BADIAN-00022839

| | |
|---|---|
| Job Description: | Supervises business of Rhino |
| Home address/phone number: | 99 Jane Street, Apt. #8C, New York, NY 10014, (212) 842-9636 |
| Business address/phone number: | 130 W. 29th Street, New York, NY 10001-5312, (212) 594-6555 |
| Annual compensation from Rhino: | $66,666.64 (2000) |

| **Maria Edwards** | |
|---|---|
| Start/end date: | 5/28/02 to 8/19/02 |
| Title: | Receptionist |
| Job Description: | See title above |
| Home address/phone number: | 200 Claremont Ave, Apt. #65, New York, NY 10027, (212) 316-4361 |
| Business address/phone number: | Unknown |
| Annual compensation from Rhino: | unknown |

| **Severo Espinoza** | |
|---|---|
| Start/end date: | 1/1/01 to present |
| Title: | Driver/Maintenance |
| Job Description: | See title above |
| Home address/phone number: | 141-41 85th Road, Apt. 2G, Queens, NY 11435 |
| Business address/phone number: | 130 W. 29th Street, New York, NY 10001-5312, (212) 594-6555 |
| Annual compensation from Rhino: | unknown |

| **Charity L. Goodman** | |
|---|---|

EXHIBIT-0047-00 90

SEC-BADIAN-00022840

| | |
|---|---|
| Start/end date: | 7/17/00 to 4/18/01 |
| Title: | Receptionist |
| Job Description: | Answering telephones, facsimileing, copying and general administrative duties |
| Home address/phone number: | 141 E. 89th Street, Apt. #3F, New York, NY 10128 |
| Business address/phone number: | Unknown |
| Annual compensation from Rhino: | $15,416.65 (2000); $9,740.43 (2001) |

| **Kenton L. Hill** | |
|---|---|
| Start/end date: | 1/13/00 to 8/31/01 |
| Title: | Investment Manager/Vice-President |
| Job Description: | Assisted President concerning investments |
| Home address/phone number: | P.O. Box 3298, New York, NY 10163 |
| Business address/phone number: | Unknown |
| Annual compensation from Rhino: | $72,499.97 (2000); $63,006.64 (2001) |

| **Alex Liesegang** | |
|---|---|
| Start/end date: | 8/21/00 to present |
| Title: | Co-Manager Due Diligence |
| Job Description: | See title above |
| Home address/phone number: | 333 East 70th Street, 8, New York, NY 10021 |
| Business address/phone number: | 130 W. 29th Street, New York, NY 10001-5312, (212) 594-6555 |
| Annual compensation from Rhino: | $31,666.68 (2000); $90,795.12 (2001) |

EXHIBIT-0047-00 91

SEC-BADIAN-00022841

| **Gregory Mussa** | |
|---|---|
| Start/end date: | 1/13/00 to present |
| Title: | Sole Director and Shareholder |
| Job Description: | N/A |
| Home address/phone number: | 9 Avenue d'Ostende, MC 98000 Monaco |
| Business address/phone number: | c/o United Oversee Management<br>27 Boulevard Albert 1er<br>5000 Euro S<br>MC 9800<br>Monaco |
| Annual compensation from Rhino: | 5,000 Euros |

| **Stefan P. Siegel** | |
|---|---|
| Start/end date: | 1/13/00 to present |
| Title: | Portfolio Manager, Manager of Due Diligence and Business Development |
| Job Description: | See title above |
| Home address/phone number: | 320 West 42nd Street, New York, NY 10017 |
| Business address/phone number: | 130 West 29th Street, New York, NY 10001-5312, (212) 594-6555 |
| Annual compensation from Rhino: | $66,666.64 (2000), $91,590.12 (2001) |

## Question No. 10

For the time period January 1, 1999 to the present, describe all current and former brokerage accounts in the name of or controlled by Rhino, Thomas Badian, Andreas Badian or Goodman Jones in which any of them is authorized to trade or traded securities for themselves or for clients. Specifically identify in which account trades were placed for clients. As to each account identified, provide the account number, where the account is or was maintained, the date

– 15 –

EXHIBIT-0047-00 92

SEC-BADIAN-00022842

the account was opened and the purpose for which the account was opened. Identify the registered representative or associated person at the broker dealer with responsibility for the account and all persons with authority to direct trades in the account.

### Answer No. 10

See Answer to Questions No. 1, and 14 and Exhibit C. Exhibit C sets forth the brokerage accounts over which Thomas Badian or Andreas Badian have control. Other than as set forth in Exhibit C, Rhino does not have information regarding any other brokerage accounts in the name of, or controlled by, Thomas Badian, Andreas Badian or Goodman Jones. Other than perhaps shopping for better fees, the documents do not indicate the purpose of opening the accounts set forth in Exhibit C.

### Question No. 11

For the time period January 1, 1999 to the present, describe all current and former bank accounts in the name of or controlled by Rhino, Thomas Badian, Andreas Badian or Goodman Jones. Specifically identify in which accounts cash belonging to clients or persons other than Rhino, Thomas Badian, Andreas Badian or Goodman Jones was held. As to each account identified, provide the account number, where the account is or was maintained, the date the account was opened and the purpose for which the account was opened.

### Answer No. 11

For the period January 1, 1999 to the present, Rhino has had a checking and savings account at Citibank. The account number is 00546265. In addition, Rhino makes direct deposit payments of salary into the personal checking account of Thomas Badian at Citibank. The account number at Citibank is ▮7245. Rhino has no other bank account information concerning Thomas Badian, Andreas Badian or Goodman Jones.

### Question No. 12

For each of the accounts maintained at broker dealers identified in 10, for each sale of Sedona Corporation ("Sedona") stock: (1) identify the person who placed the order; (2) state the date and time of the sale and number of shares sold; (3) state the price at which the shares were sold; (4) state the rationale for the price and timing of each sale; (5) identify the account representative who received the order for the sale; (6) identify the contra broker purchasing the

– 16 –

EXHIBIT-0047-00 93

SEC-BADIAN-00022843

Sedona stock; (7) state the reason why each trade was made with a specific contra party; (8) describe any communications concerning the trade between Rhino and its broker or Rhino and the contra broker at any time prior to executing or reporting the trade; (9) if the sale was executed or reported after the market closed at 4:00 p.m. e.s.t., state the reasons for the timing of such trade; (10) state whether the seller held any shares of Sedona stock in its account at the time of the sale; (11) state whether the seller delivered the shares that it sold by settlement date (T+3); (12) if the seller failed to deliver the shares by settlement date, state whether the brokerage firm where the account was maintained effected a mandatory buy in of stock in the seller's account by settlement date; (13) state whether Rhino or the seller made an affirmative determination as to whether the seller could acquire the shares or whether the firm where the account was held could borrow the shares by settlement date; (14) describe the bases for the determination and identify each document memorializing or noting the determination that Rhino or the seller made; (15) if Rhino's or the seller's position is that the seller was "selling on prospectus," explain what this means and state all facts known to Rhino concerning the seller's rationale for this strategy; and (16) if Rhino's or the seller's position is that the sales constituted a bona fide hedging strategy, state all facts known to Rhino concerning such strategy; and (17) state whether the seller ever held a "net short" position in Sedona stock and, if so, state the extent of that position.

### Answer No. 12

The Sedona transaction and trading generally follow the trading strategies described in the response to Question 1. It is evident that Amro was, overall, a seller of Sedona stock and had at times a short position.

The following is a general chronology of the Sedona transaction and Amro's trading in Sedona securities. A more detailed chart regarding the finance and trading activity in Sedona is attached as Exhibit D.

| Late 1999/ early 2000 | Ladenburg Thalmann & Co. introduces Sedona to Rhino for possible investment by Rhino's clients. |
|---|---|
| 2/25/00 and 2/28/00 | Amro participates in a convertible preferred stock transaction with Sedona. Amro purchases $1.7 Million of principal of convertible preferred stock and receives 56,666 warrants with an exercise price of $5.037. |
| 4/10/00 | Sedona files an S-3 registration statement to register the conversion shares which is declared effective on 4/18/00. |
| 6/26/00 | Amro executes its first short sale in Sedona common stock. |
| 6/28/00 | Amro converts $250,000 of principal, plus interest, into 86,795 shares. |
| 6/28/00 - 8/18/00 | Amro sells the shares received in the conversion. |
| 8/18/00 | Roseworth, a Creon SPV, buys 476,190, shares of common stock from a |

EXHIBIT-0047-00 94

SEC-BADIAN-00022844

|  | Sedona shelf registration statement. At this point, Rhino's clients are net long. |
|---|---|
| 9/1/00 | Roseworth sells 21,000 shares of common stock at market. |
| 8/18/00 - 10/23/00 | Amro sells its long shares of common stock and builds a short position. |
| 11/3/00 | Amro converts $100,000 of convertible preferred stock into 95,497 shares common stock, leaving Amro with $1,350,000 in principal of preferred stock. |
| 11/22/00 | Amro buys a $3 million convertible debenture and warrants described below for $2.5 million, made up of the $1,350,000 principal preferred stock that is tendered at a redemption premium and cash. Amro also receives 400,000 warrants with a strike price of $1.35. |
| 10/23/00 - 12/7/00 | Rhino's clients sell short shares of Sedona common stock. |
| 12/5/00 | Cambois Finance, a Creon SPV, purchases 1,030,920 shares of common stock off of the Sedona shelf registration statement. This reduces the net short position. |
| 12/7/00 - 1/24/01 | Rhino's clients increase their short position. |
| 1/23/01 | Amro buys 32,000 shares of common stock through Dundee |
| 1/23/01 | Amro buys 1,538,462 shares of common stock off of the Sedona shelf registration statement at $0.60 per share. Amro also sells Sedona shares of common stock in the market. |
| 3/26/01 | Amro buys 50,000 shares and sells 31,300 shares of common stock through Refco Securities. |
| 4 - 5/01 | Amro makes a series of conversions, eliminating its short position, and selling its conversion shares. |
| 4/26/01 | Sedona and Amro enter into a note extension agreement. As part of that agreement, the exercise price on the original 56,666 warrants is reduced to $.001. Amro exercises the warrants on 5/2/01. |
| 4 - 7/01 | Amro takes conversion shares at its Amro Westminster account and does a directed sale to its Refco account and the BNC–Bach account at Canaccord to cover its short position. |
| 9/01 | Amro delivers to Sedona a conversion notice, which Sedona refuses to honor. |
| 10/24/01 | Amro brings an action against Sedona seeking to require Sedona to honor the conversion notice. The lawsuit is withdrawn shortly thereafter |
| 2/02 | A settlement agreement between Amro and Sedona is reached whereby Amro receives cash and shares of common stock over time from Sedona. As part of the settlement, the parties exchange mutual general releases. Amro had been 800,000 shares short at the time of the settlement. It slowly transferred settlement shares to cover the short position and sold the remaining shares. |

EXHIBIT-0047-00 95

SEC-BADIAN-00022845

### Question No. 13

For each of the accounts maintained at broker dealers identified in 10, for each purchase of Sedona stock: (1) identify the person who placed the order; (2) state the date and time that the order was executed; (3) state the number of shares purchased; (4) state the price at which the shares were purchased; (5) state the rationale for the price and timing of each purchase; (6) identify the account representative who received the order for the purchase; (7) identify the contra broker selling the Sedona stock; (8) state the reason why each trade was made with a specific contra party; (9) describe any communications concerning the trade between Rhino and its broker and the contra broker at any time prior to executing or reporting the trade; (10) for each purchase of Sedona stock on March 26, 2001, state the reason for each purchase, describe all communications concerning such purchase; and (11) state what the purchaser did with the Sedona shares that it purchased.

### Answer No. 13

See Answer to Question No. 12 and Exhibit D.

### Question No. 14

From January 1, 1999 to the present, for each person or entity (including its employees, officers, directors, principals, agents or associated persons) listed below, (1) describe Rhino's (including its employees, officers, directors, principals, agents or associated persons) knowledge of, and relationship with, each such person or entity; (2) identify and describe the manner, substance, and date of all communications between such person and entity with Rhino; (3) provide contact information for each person or entity with whom Rhino has a relationship; and (4) identify any understanding, agreement or contract that Rhino had with any such individual or entity:

(1) Amro;

(2) Hans Bacofen [sic];

(3) Ezra Birnbaum;

(4) BNC Bach International Ltd.;

(5) BNY Clearing Services, L.L.C.;

(6) Canaccord Capital Corp;

(7) Creon;

(8) Matthew Drillman a.k.a. Mottes Drillman;

(9) Eastside Holdings LLC or Eastside Holdings II LLC;

EXHIBIT-0047-00 96

SEC-BADIAN-00022846

(10) Epstein, Becker & Green P.C.;

(11) Michael Finkelstein;

(12) William D. Frankel & Co.;

(13) Hornblower, Fischer & Company;

(14) Ladenburg Thalmann & Co., Inc.;

(15) Olympia Partners LLC;

(16) John P. O'Shea;

(17) Pershing Division of Donaldson, Lufkin & Jenrette Securities Corporation;

(18) Pond Equities LLC;

(19) Refco Securities LLC;

(20) Sedona Corporation;

(21) Jacob Spinner;

(22) Westminster Securities LLC; and

(23) Wexford Clearing Services, Corp.

## Answer No. 14

**1 Amro**

a. Amro is a client of Rhino. Rhino managed investment transactions on behalf of Amro during the period in question. Amro directors are H. U. Bachofen, Michael Klee, and Ruth Streitenbuerger.

b. Communications between Rhino and Amro occur by facsimile, mail, or telephone. Written communications between Rhino and Amro were included in the documents produced by Rhino pursuant to the Subpoena. The contact information for Amro and its directors is:

> Ultra Finanz Limited

– 20 –

EXHIBIT-0047-00 97

SEC-BADIAN-00022847

       Grossmuensterplatz 6

       P.O. Box 4401

       Zurich CH-8022 Switzerland

       Tel: 011 411 252 8680

       Fax: 011 411 262 5515

  d.  There is a partially executed Portfolio Management Agreement (i.e., investment advisory agreement) by H. U. Bachofen of Amro and Rhino.

**2 Hans Bachofen**

See Answer No. 1 to Question 14 above.

**3 Ezra Birnbaum**

Rhino has no information concerning this individual.

**4 BNC Bach International ("BNC Bach")**

  a.  BNC Bach is an Amro SPV by which Amro invests in certain financing transactions described generally in response to Question No. 1. The directors are H.U. Bachofen and Michael Klee and Ruth Streitenburger.

  b.  Communications between Rhino and Amro/BNC Bach occurred by facsimile, mail and telephone. Written communications between Rhino and Amro/BNC Bach were included in the documents produced by Rhino pursuant to the Subpoena.

  c.  See Answer to Question No. 1(c) above.

  d.  There are no agreements between BNC Bach and Rhino.

**5 BNY Clearing Services LLC**

  Rhino has no information concerning this entity.

**6 Canaccord Capital ("Canaccord")**

              − 21 −

EXHIBIT-0047-00 98

SEC-BADIAN-00022848

a. Canaccord is a Canadian brokerage house at which there are several trading accounts belonging to BNC Bach, Roseworth, Creon, Amro, Paul Revere and Belmont Park. The toll free number of Canaccord is 1-800-382-9280. Michael Finkelstein is the account manager. The telephone number of Finkelstein is 1-416-869-7368 and his email address is m_finkelstein@canaccord.com. Other contacts at Canaccord are Reka Kikeli and Paula MacPhee.

b. Canaccord communicated by telephone concerning trading orders, and by facsimile and mail for account statements. Rhino received account statements on behalf of the designated entity. Written communications with Canaccord are included in the documents produced by Rhino pursuant to the Subpoena. See documents bates stamped R 21517 to R 21523 and in Rhino's files.

c. The contact information for Canaccord is as follows:

> PO Box 6
>
> 1210-320 Bay Street
>
> Toronto, ON
>
> M5H 4A6
>
> Tel: (416) 869-7368
>
> Toll Free: 1-800-382-9280
>
> Facsimile: (416) 869-7356

d. There are no agreements between Canaccord and Rhino. There are account opening documents and trading authorizations agreements between Canaccord and Rhino's clients.

**7    Creon**

EXHIBIT-0047-00 99

SEC-BADIAN-00022849

    a.    Creon is a client of Rhino. Rhino managed investments for Creon and its SPVs. The directors of Creon are David Sims and Lamberto Banchetti.

    b.    Creon and Rhino communicate via facsimile mail and telephone. Written communications with Creon are included in the documents produced by Rhino pursuant to the Subpoena and in Rhino's files.

    c.    The contact information for Creon and its directors is:

> c/o Beacon Capital Management
>
> Harbor House, 2nd Floor
>
> Waterfront Drive
>
> Road Town, Tortola
>
> British Virgin Islands
>
> Tel: 284-494-4770

    d.    There is a fully executed Portfolio Management Agreement (investment advisors agreement) between Creon and Rhino.

**8    Mathew Drillman**

    a.    The Documents indicate that Mathew Drillman was an employee at Refco.

    b.    Documents indicate that Communications occurred via e-mail.

    c.    I do not know the current contact information for Drillman.

    d.    There are no agreements between Drillman and Rhino.

**9    Eastside Holdings**

    Rhino has no information regarding this entity.

EXHIBIT-0047-00 100

SEC-BADIAN-00022850

10    **Epstein Becker & Green, P.C.**

a.    Epstein Becker & Green, P.C. provided legal representation to Amro and Creon. The principal lawyers were Joseph Smith and later myself.

b.    Communications between Amro or Creon and Epstein Becker & Green, P.C. occurred by phone, facsimile, and e-mail. Non-privileged written communications with Epstein Becker & Green, P.C. are included in the documents produced by Rhino pursuant to the Subpoena. See documents bates stamped R 21524 to R 21575 and in Rhino's files.

c.    The contact information for Epstein Becker & Green, P.C. is as follows:

> 250 Park Avenue
>
> New York, New York 10177-1211
>
> Tel. 212/351-4500
>
> Facsimile 212/661-0989

Smith's and my current contact information is:

> Feldman Weinstein LLP
>
> 420 Lexington Ave.
>
> New York, New York 10107
>
> (212) 869-7000

d.    No agreements exist between Rhino and Epstein Becker & Green, P.C.

11    **Michael Finkelstein**

See Answer No. 6 to Question 14 above.

12    **William D. Frankel & Co. ("Frankel & Co.")**

a.    Frankel & Co. is a market maker.

EXHIBIT-0047-00 101

SEC-BADIAN-00022851