# EXHIBIT D



**DLA Piper** LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Joshua S. Sohn
joshua.sohn@dlapiper.com
T  212.335.4892
F  212.884.8492

November 30, 2011

**BY HAND**

Honorable Laura Taylor Swain
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 755
New York NY 10007-1312

Re:    *SEC v. Badian, et al.*, 06 CV 2621 (LTS) (JLC)

Dear Judge Swain:

We represent Defendant Andreas Badian in this case. Per the Court's September 28, 2011 Order (the "Order"), Badian recently took the depositions of four witnesses identified by the SEC as key to authenticating the audio recording tapes that it seeks to offer in this case. Their testimony, which includes multiple apologies by Mr. Llanes for not checking his SEC-drafted declaration more carefully,[1] makes plain that the Llanes declaration and supplemental Llanes declaration, upon which the Court primarily relied in issuing the Order, are false and misleading in highly material respects, and that the other witnesses are wholly incapable of laying a proper foundation for admission of the tapes into evidence at trial. As a result of these new facts and the revelation that Mr. Llanes's declarations do not reflect his actual knowledge about the recordings at issue here, Badian respectfully requests (1) the opportunity to submit a brief sur-reply to his motion for reconsideration and (2) an order requiring the SEC to pay the costs incurred by Badian to take the depositions.[2]

---

[1] A copy of Mr. Llanes's November 21, 2011 deposition ("Llanes Depo.") is attached as Exhibit A to this letter. Llanes Depo., 28:11-14, 50:16-51:7, 72:18-73:4, 74:12-25; 129:15-130:4.

[2] *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001 (NRB), 2002 WL 31856951, at *2 (S.D.N.Y. Dec. 19, 2002) (to prevail on a motion for reconsideration, the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that "'might reasonably be expected to alter the conclusion reached by the court.'") (internal citations omitted); *Exportaciones Del Futuro S.A. de C.V. v. Iconix Brand Grp. Inc.*, No. 07 Civ. 4145 (LBS), 2007 WL 3306699, at *1 (S.D.N.Y. Nov. 6, 2007) (same). In this case, Badian had no opportunity to depose the SEC's authentication witnesses until after the Order.



Judge Laura Taylor Swain
November 30, 2011
Page Two

> 1. *Contrary To The SEC's Representations, John Llanes Was Not Familiar With The Recording System Or Practices In New York When The Recordings Were Made And Does Not Have Knowledge Of The Storage Of The Relevant Recordings.*

Based on the SEC's representations, the Court ruled in the Order that the audio recordings are admissible, finding that the SEC "has met its burden . . . by proffering, inter alia, a declaration from [John Llanes] the head of Refco's Information Technology department in the New York office explaining how the recordings were made and Defendants' deposition testimony indentifying their voices on the recording."[3]

Mr. Llanes's deposition testimony, however, demonstrates that he cannot explain "how the recordings were made" because he has no knowledge of how these recordings—or any recordings for that matter—were made during the relevant time period. Specifically, he testified that in 2001, he had *no* responsibility whatsoever for the NiceLog system in either the New York office or Chicago office where he worked.[4] He further testified:

> Q. First of all, as we discussed earlier, you were not in the New York office in 2001; is that correct?
> A. That is correct.
> Q. Nor were you the head of the IT department in 2001; is that correct?
> A. That is correct.
> Q. So in terms of what the Nice logger system was set to record or not set to record, you can't testify one way or the other as to that, can you?
> . . .
> A. In New York?
> Q. Correct.
> A. That is correct.
> Q. And it's also true, isn't it, Mr. Llanes, that you can't testify that the recordings that were made in New York on the Nice logger system at Refco are complete recordings of everything on the trading desks, can you?
> A. I do not know.[5]

---

[3] Order p. 17.

[4] Llanes Depo., 32:23-35:3.

[5] Llanes Depo., 127:4-23.



Judge Laura Taylor Swain
November 30, 2011
Page Three

Claiming that "[i]t is sufficient that Llanes, as a member of . . . Refco's IT staff that operated the NiceLog recording system, was familiar with Refco's practices and declared that the audio recording was made and kept by Refco in the regular course of its business practices,"[6] the SEC crafted Mr. Llanes's declarations to make it appear that he had familiarity with, and knowledge about, the recording practices of Refco's New York office in 2001. He did not. In fact, contrary to the declarations that the SEC drafted for him and submitted to this Court, at his deposition, Mr. Llanes disavowed any familiarity with the NiceLog system as utilized in the New York office (or the Chicago office) in 2001 and any knowledge of the practices in Refco's New York office at any time prior to June 2003. These inconsistencies, as detailed in the chart below, can be construed as nothing less than an attempt by the SEC to mislead the Court and counsel for Badian.

| **Llanes's Declarations Submitted by the SEC** | **Llanes's Deposition Testimony** |
|---|---|
| "Prior to June 2003 I was familiar with Refco's practice of taping the telephone calls made to or from Refco's trading desks. I knew this taping occurred at most or all of Refco's offices, including its Chicago and New York offices, and that this practice had been in effect for several years."[7] | Mr. Llanes was *not* familiar with Refco's practice prior to June 2003.[8] |
| | Mr. Llanes also testified that he was not in charge of the NiceLog systems in New York or Chicago prior to June 2003.[9] |
| | He further testified that he was unaware of whether a feature of the NiceLog system allowing a selective recording program to be established, as described in a 2004 technical manual, was available in 2001, and has no knowledge of what settings the New York or Chicago system was utilizing at that time.[10] |
| | Q. So do you have any idea why the |

---

[6] SEC's Oppositions to Badian's Motion for Reconsideration, October 31, 2011, Docket No. 281, p. 16.

[7] Supplemental Declaration of John Llanes, dated December 6, 2010 ("Llanes Supp. Decl."), Docket No. 229-8, ¶ 3.

[8] Llanes Depo., 74:8-75:21.

[9] Llanes Depo. 32:2-35:3.

[10] Llanes Depo., 43:18-44:25, 127:4-23.



Judge Laura Taylor Swain
November 30, 2011
Page Four

| **Llanes's Declarations Submitted by the SEC** | **Llanes's Deposition Testimony** |
|---|---|
| | declaration doesn't just say as to what your knowledge is in 2001? |
| | A. Because I have no knowledge.[11] |
| | Q. Can you tell me at what point precisely prior to June 2003 you were "familiar with Refco's practice of taping telephone calls?" |
| | A. Prior to 2003 I was not. |
| | Q. So was this first sentence of paragraph 3 of Exhibit 4 inaccurate? |
| | A  That is correct.[12] |
| "The system recorded all conversations that took place on or near the telephones used on Refco's trading desk."[13] | Mr. Llanes has "no specific knowledge of whether the New York office recorded all telephone conversations from traders' desks" in 2001.[14] |
| | Q. And in 2001 you had no specific knowledge of whether the New York office recorded all telephone conversations from traders' desks; is that right? |
| | A. I cannot say.[15] |
| "On two occasions *prior to June, 2003*, I was assigned to obtain and listen to recordings made on the NiceLog logger in Refco's New York office. In connection with this project, I | Mr. Llanes testified that he only worked with the NiceLog system "after June 2003" and that prior to June 2003, he had no involvement with the NiceLog system in New York or |

---

[11] Llanes Depo., 74:12-15.

[12] Llanes Depo., 75:14-21.

[13] Declaration of John Llanes, dated December 28, 2007 ("Llanes Decl."), Docket No. 196, ¶ 3.

[14] Llanes Depo., 77:3-10.

[15] Llanes Depo., 77:6-10.



Judge Laura Taylor Swain
November 30, 2011
Page Five

| Llanes's Declarations Submitted by the SEC | Llanes's Deposition Testimony |
|---|---|
| worked with the Refco personnel in New York who were responsible for the operation of the logger in that office, including Melissa Montella and the head of the information technology in New York at that time, Greg Blauth."[16] | Chicago.[17] <br><br> Q. On paragraph 5 of the same Exhibit 4, do you see it says: "On two occasions prior to June 2003 I was assigned to obtain and listen to recordings made on the NiceLog logger in Refco's New York office." Do you see that? <br><br> A. Yes. <br><br> Q. Can you tell me exactly when that was prior to June 2003? <br><br> A. Yes, and that's wrong again. I should not have said prior. It should have been after. <br><br> Q: So prior to June 2003 you never were assigned to obtain and listen to any recordings made on the NiceLog logger in Refco's New York office; is that correct? <br><br> A. That is correct.[18] <br><br> Further, Melissa Montella testified that she had no involvement with the NiceLog system or the audiotapes until at least June 30, 2003[19] and that, in any event, it was never her responsibility to ensure that the system was working properly or that tapes were recording |

---

[16] Llanes Supp. Decl. ¶ 5 (emphasis added).

[17] Llanes Depo., 77:11-78:2.

[18] Llanes Depo., 77:11-78:2.

[19] A copy of excerpts from Ms. Montella's November 18, 2011 deposition ("Montella Depo.") is attached as Exhibit B to this letter. Montella Depo., 57:20-25.

[20] Montella Depo., 58:22-59:3.



Judge Laura Taylor Swain
November 30, 2011
Page Six

| Llanes's Declarations Submitted by the SEC | Llanes's Deposition Testimony |
|---|---|
| | accurately.[20] |
| "In or around July 2003 I observed a large collection of [NiceLog] tapes stored in a locked file cabinet inside a locked equipment cage" at Refco's New York office.[21] | While this statement suggests that the tapes relevant to this case were secured in this fashion, Mr. Llanes has no knowledge of whether those tapes had anything to do with this case.[22] "Do I know that those were the actual tapes that were being worked on for this specific case? The answer is no. . . . Now I can't tell you that those – that's where the tapes were, because I wasn't the – I wasn't the keeper of those tapes, right."[23]<br><br>Q: So all you told the SEC was that you saw tapes in a locked equipment cage?<br><br>A. Yes.<br><br>Q. You were not able to say which tapes they were; is that correct?<br><br>A. Correct.[24] |

    Mr. Llanes also testified that his involvement in providing Refco tapes to Mayer Brown, a law firm representing Refco, occurred *after June 30, 2003* and, therefore, any tapes that were given to Mayer Brown prior to late June 2003, were provided by someone else at Refco.[25] Indeed, in a May 30, 2003 letter from John Hewitt of Mayer Brown to Christopher Ehrman of the SEC, Hewitt explained that "twenty-nine of the seventy requested tapes were sent to the Staff on April 29, 2003."[26] Since the Court's Order, Badian, who has requested but never received

---

[21] Llanes Supp. Decl. ¶ 7.

[22] Llanes Depo., 66:5-67:18, 67:24-73:12.

[23] Llanes Depo., 70:8-10, 16-18.

[24] Llanes Depo., 72:12-17.

[25] Llanes Depo., 57:6-58:24.

[26] Letter, dated May 30, 2003, from John Hewitt to Christopher Ehrman, Docket No. 196-3, p. 6.



Judge Laura Taylor Swain
November 30, 2011
Page Seven

copies of the original audio tapes from the SEC, has learned that the SEC has more than 180 tapes in its possession, some of which are "blank" or labeled by various issues, such as "Media Failure Tape Defective" or "Problem with loading tape" or "error on tape." As Mr. Llanes has already explained, he is in no position to discuss these tapes. At no time did the SEC ever inform Badian or his counsel that there were blank tapes, tapes that were defective, or tapes that would not load due to errors.

The glaring inconsistencies between Mr. Llanes's testimony and his declarations reveal that he is not an individual capable of explaining how the recordings were made at Refco in 2001, as the SEC led this Court to believe. In fact, Mr. Llanes's testimony demonstrates that he has no knowledge whatsoever about Refco's practice of recording phone calls in 2001, including but not limited to, how the calls were actually recorded by the NiceLog system, and, similarly, has no knowledge about the maintenance and storage of the tapes containing these recordings from 2001 until at least June 2003. In this regard, Mr. Llanes cannot explain "how these recordings were made" in New York or Chicago in 2001 as this Court relied upon in its Order.[27]

    2.    *The SEC's Other Authentication Witnesses' Testimony Is Similarly Inconsistent With Their Declarations And Contradictory*

In accordance with the Court's Order, Badian also deposed three other purported authentication witnesses identified by the SEC: Anthony Visconti, Melissa Montella and Kenneth Pfitzer, on November 17, November 18, and November 28, 2011 respectively.[28] All of these witnesses' testimony makes clear that Mr. Llanes was not involved with the NiceLog system in New York (or anywhere) in 2001 or 2002 and is not capable of explaining how the Refco tape recordings at issue were made, maintained, stored or sent to Mayer Brown or the SEC. Moreover, these witnesses' testimony demonstrates that they similarly are incapable of laying a proper foundation for the admission of the audio recordings.

---

[27] Order p. 17.

[28] The SEC has not put declarations from any of these witnesses before the Court. However, in January 2011, long after the motions *in limine* were fully briefed and the final pretrial documents were submitted to the Court, the SEC sent two three-page declarations of Anthony Visconti, and Kenneth Pfitzer, technicians apparently involved with installation and maintenance of the phone systems at Refco, to Badian. These untimely and improper declarations, from witnesses that did not appear on the SEC's Rule 26(a)(3) witness list and, in fact, were not disclosed until the SEC submitted its final pretrial witness list on December 10, 2011, were drafted by the SEC and were squarely contradicted by the witnesses' own testimony. The SEC has not provided a declaration for Ms. Montella.



Judge Laura Taylor Swain
November 30, 2011
Page Eight

      For instance, at his November 17, 2011 deposition, Mr. Visconti, who was apparently the onsite technician at Refco in charge of "maintaining" the NiceLog system in Refco's New York office, testified that (1) he was not responsible for maintaining, changing or labeling tapes,[29] (2) he did not know whether Refco recorded every conversation in the New York office,[30] (3) he would not have known whether the logger failed to record a conversation unless he was asked to search for a conversation and was unable to locate it,[31] (4) "[a]nyone with access to the logger software" could disable the system, and while a number of Refco employees had such access, he did not recall everyone at Refco who had such access,[32] and (5) he believes that once the recording was "extracted to the .wav file," as was done in this case, "anything" can be done to "manipulate" the recording.[33]

      Likewise, Mr. Pfitzer, who apparently installed the NiceLog system at Refco and occasionally filled in for Mr. Visconti as IPC's onsite technician at Refco when Mr. Visconti was sick or on vacation, testified that (1) he did not recall when he installed the system at Refco,[34] (2) he did not know if every phone line was recorded at Refco and did not recall if just phones on the trading desk were recorded,[35] and (3) it was normal procedure to check tapes daily to ensure that the system was recording and conversations were audible, but Mr. Visconti testified that he did not listen to tapes for accuracy or to ensure that recording was being properly done.[36]

      Finally, Ms. Montella, a former office manager at Refco, who the SEC identified as a witness purportedly responsible for maintenance of the Refco tapes, testified that she had nothing to do with the NiceLog system or the audiotapes until at least June 30, 2003[37] when Mr. Llanes began working in Refco's New York office, and that, in any event, it was never her

---

[29] A copy of excerpts from Mr. Visconti's November 17, 2011 deposition ("Visconti Depo.") is attached as Exhibit C to this letter. Visconti Depo., 61:4-62:2, 55:9-11.

[30] Visconti Depo., 55:22-56:2, 69:10-70:17.

[31] Visconti Depo., 78:10-24.

[32] Visconti Depo., 70:18-71:12.

[33] Visconti Depo., 71:15-72:10, 80:4-81:25.

[34] A copy of excerpts from Mr. Pfitzer's November 28, 2011 deposition ("Pfitzer Depo.") is attached as Exhibit D to this letter. Pfitzer Depo., 23:21-24:9.

[35] Pfitzer Depo., 26:14-17, 76:14-22.

[36] Pfitzer Depo., 56:19-57:20. Visconti Depo., 44:18-21.

[37] Montella Depo., 57:6-58:8.



Judge Laura Taylor Swain
November 30, 2011
Page Nine

responsibility to ensure that the system was working properly or that tapes were recording accurately.[38] Moreover, with respect to her "maintenance" of the tapes, Ms. Montella testified that she did not keep (nor did she know anyone to keep) a log of the tapes after they were removed from the NiceLog system and that the tapes were kept in file cabinets where they were "pile[d] . . . up until [they] couldn't close the drawer," at which point tapes would be moved to another cabinet.[39] She further testified that she did not know who had access to the tapes but was aware that a law firm came to Refco sometime after June 2003 and began listening to tapes and had access to the tapes and pulled their own.[40] She did not know whether those tapes were ever returned to Refco.[41]

      As described above, the SEC has misrepresented the facts in connection with its proffers in support of its attempt to authenticate the audio recordings at issue. In particular, the SEC has led this Court to believe that declarations from its primary authentication witness, Mr. Llanes establish that he had critical knowledge about the Refco recordings and the NiceLog system prior to 2003, but that is simply not true. Mr. Llanes's disavowal of significant portions of his declarations demonstrate that his testimony is wholly insufficient (and unreliable) to properly authenticate the Refco tape recordings. Moreover, the SEC has similarly misled the Court into believing that it has a host of other witnesses prepared to testify about creation, maintenance and accuracy of the recordings when that is simply not the case. In light of this conduct, the SEC should not be permitted to introduce the audio recordings, and should be ordered to bear the costs of the depositions that Badian incurred here.

Respectfully submitted,

Joshua S. Sohn

---

[38] Montella Depo., 58:22-59:3.

[39] Montella Depo., 34:9-10, 35:7-16, 53:17-18.

[40] Montella Depo., 46:4-10, 47:13-48:3, 60:19-61:22.

[41] Montella Depo., 46:4-10, 47:13-48:3, 60:19-61:22.