UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

-v-                                       No. 06 Civ. 2621 (LTS)

ANDREAS BADIAN et al.,

        Defendants.

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 2 0 2012

## MEMORANDUM ORDER

        Currently before the Court is a motion filed by defendant Andreas Badian ("Defendant" or "Badian") for reconsideration of certain aspects of the Court's September 28, 2011, Order (the "September Order") resolving eight motions in limine that were filed by Defendant and by the plaintiff, the United States Securities and Exchange Commission ("Plaintiff" or the "S.E.C."), in this civil enforcement action for alleged securities fraud. The parties' familiarity with the facts of the case is presumed. The Court has considered carefully the parties' submissions and, for the following reasons, Defendant's motion is granted in part and denied in part.

### Discussion

        A motion for reconsideration under Local Rule 6.3 is evaluated under the same standard as an application to alter or amend a judgment under Fed. R. Civ. P. 59(e). Williams v. N.Y. City Dep't of Corr., 219 F.R.D. 78, 83 (S.D.N.Y. 2003). Such a motion is neither an opportunity for the movant to take a "second bite at the apple," Rafter v. Liddle, 288 Fed. App'x 768, 769

(2d Cir. 2008), nor "a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion." Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003). Rather, the party moving for reconsideration bears the heavy burden of showing "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

The S.E.C.'s Belatedly Proffered Exhibits and Belatedly Identified Witnesses

In his motion, Badian asks the Court to reconsider its denial of Badian's in limine motions and to preclude certain witnesses, strike certain exhibits and sanction the S.E.C. for asserted discovery violations. Badian has not, however, identified an intervening change in controlling law, new evidence, or a clear error that would warrant the relief Badian is seeking in this respect. Accordingly, Badian's motion for reconsideration of the Court's decision not to preclude certain witnesses or strike certain exhibits will be denied.

Badian has, however, directed the Court's attention to a typographical error in footnote 5 on page 17 of the September Order. Footnote 5 provides that Defendant may depose "all of the witnesses whose declarations the S.E.C. has not proffered in support of the authenticity of the recordings." (September Order p. 17) (emphasis added). The word "not" should read "now" and the footnote will be amended accordingly.[1]

---

[1] The S.E.C. represents that, before this typographical error was brought to the Court's attention, the S.E.C. consented to allow defendants to depose all of the authenticity witnesses. (Pl.'s Mem. in Opp. p. 22.)

BADIAN.RECONSIDERATION.WPD   VERSION 6/20/12   2

The Refco Audio Recordings

In the September Order, the Court declined to preclude audio recordings allegedly created and maintained by non-party Refco. Defendant requests reconsideration of that decision, asserting that the Court applied the wrong legal standard for purposes of authentication of those recordings and that certain evidence proffered by the S.E.C. to support the authenticity of the recordings is unreliable.

"The burden of authentication [of an audio recording] does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity. . . . Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." McLaurin v. New Rochelle Police Officers, 439 Fed. App'x 38, 40 (2d Cir. Sept. 15, 2011) (citation omitted). In McLaurin v. New Rochelle Police Officers, the United States Court of Appeals for the Second Circuit held that an appellee's evidence in support of the authenticity of an audio recording "was sufficient to support a finding that the matter in question is what its proponent claims . . . and it was therefore sufficient to authenticate the tape." Id. (citing Fed. R. Evid. 901(a)). The Court of Appeals explained further that an audio recording's authenticity is evaluated pursuant to a reasonable likelihood standard and that the question of an audio recording's "ultimate reliability" is one for the jury. Id. Questions of reliability, including allegations of tampering, go to the weight of the evidence rather than its admissability. Id.

In the September Order, the Court applied a reasonable likelihood standard and found that Plaintiff had met its burden of authentication. As explained in that Order, Badian's argument that a "clear and convincing evidence" standard is appropriate is unfounded.

Having considered the parties' proffers and arguments with respect to the S.E.C.'s authentication evidence, the Court finds that neither reconsideration of its decision to admit the

Refco recordings, nor sanctions for alleged discovery violations by the S.E.C., is warranted. Badian's reconsideration motion, including its sanctions component, will therefore be denied in this regard.

The Prowse and Beloreshki Report

The Court precluded expert testimony as to the opinions and analysis proffered in sections II and IV of the report of Stephen Prowse and Tsvetan Beloreshki (the "PB Report"). Defendant's motion to reconsider the preclusion of testimony proffered in section II of the Report is denied. Defendant's motion to reconsider the preclusion of section IV is granted, as Defendant has found a clear error in the September Order.

1. Section II of the Prowse and Beloreshki Report

Defendant offers various arguments for reconsideration of the preclusion of section II of the PB Report. First, Defendant argues that the Court "erroneously implies" that Prowse and Beloreshki opine on Badian's state of mind, citing to page 13 of the September Order. The portion of the September Order cited by Defendant, on the contrary, permits the introduction of part of the PB Report because, unlike the report of expert Steven Thel, the PB Report did "not opine on Badian's state of mind." (September Order p. 13.) Defendant's argument that the Court implied otherwise is unavailing.

Next, Defendant argues that the Court "erroneously criticize[d]" the PB Report for ignoring the price-risk protective terms of the Sedona Debenture. This argument, too, is unavailing. In its September Order, the Court noted that, although section II of the PB Report purports to analyze the nature of the Sedona Debenture, the Report gives "only cursory attention to the price-risk protective terms of the Debenture," which is "a key element of the SEC's theory of the case." (September Order p. 7.) Defendant has not cited to material in the PB Report that

the Court overlooked in its initial consideration of the PB Report. Defendant cites specifically to paragraphs 34-50 and exhibits 7-9 of the PB Report and alleges that those paragraphs and exhibits provide adequate details regarding the risks associated with the Debenture. However, while those cited materials purport to explain why the decline in Sedona's stock price was consistent with market, industry and company-specific factors, they do not address the price protective aspect of the Debenture. In the context of this case, an expert's testimony as to the overall risk associated with the Sedona Debenture, unsupported by an analysis of the Debenture's crucial price protective aspect, is not the product of reasonable principles and methods applied reliably to the facts of this case and lacks the level of intellectual rigor that characterizes the practice of an expert in the relevant field.

Defendant also argues that case law and the relevant academic literature is "consistent" with the findings of the PB Report and that, therefore, the Court should permit all of Prowse and Beloreshki's testimony. In particular, Defendant cites ATSI Commc'n, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007), for the proposition that "purchasing a floorless convertible security is not, by itself or when coupled with short selling, inherently manipulative." Id. at 101. The proposition cited by Badian does not warrant reconsideration of the Court's September Order. Parts of the PB report have been excluded not because Badian's behavior was necessarily illegal—that is a question for the jury. Rather, parts of the PB report have been excluded because they purport to use methods and principles that are generally accepted to support one type of conclusion but are used in the Report to support a different type of conclusion without adequate foundation. For instance, Prowse and Beloreshki's conclusion that the drop in Sedona's stock price is "consistent" with market, industry and company-specific factors is supported by methods that appear to the court to be acceptable methods to support such

a conclusion. However, the Report also suggests, and Badian's memorandum of law confirms, that this same analysis is proffered to support a finding that the apparent price-risk protective aspects of the Debenture did not actually protect investors against price risk. Without more, Prowse and Beloreshki's analysis does not support that conclusion.

Defendant also cites Nanopierce Techs., Inc. v. Southridge Capital Mgm't, 08 Civ. 0676, 2008 WL 250533 (S.D.N.Y. Jan. 29, 2008), for the proposition that "death-spiral financing," such as the Sedona Debenture, "is not inherently manipulative." Id. at *4. The question of whether death-spiral financing is inherently manipulative is distinct from whether the Sedona Debenture at issue here carried significant price-risk protection that created an opportunity and incentive for manipulative trading.

Defendant cites the article Death Spiral Convertibles, by Pierre Hillion and Theo Vermaelen, which all parties concede is authoritative, for two propositions: first, that the price protection afforded by a future-priced security applies "(i) only as long as the stock price is positive and the company is willing and able to honor the conversion notice and (ii) only at the time of (but not subsequent to) conversion," (Def.'s Mem. in Supp. p. 18-19); and, second, that investors in future-priced securities carry default risk, reputation risk, and liquidity risk. With regard to the conditions under which price-risk protection applies, Defendant's memorandum states that the Court's Order "missed entirely" these conditions. (Id. at 19.) On the contrary, the Court is aware of the conditions and, indeed, the September Order quoted the exact sentence from the Hillion-Vermillion article that Defendant claims was overlooked. (September Order p. 7.) The existence of such limitations to the Debenture's price-risk protection mechanism does not excuse the PB Report's failure to address the Debenture's price-risk protection while opining on the overall incentives created by the Debenture. With regard to the other types of risk faced

by investors in future-priced securities, the Court is aware of these risks but, again, the existence of these risks does not excuse what the Court found to be a material gap in the Report's analysis.

Lastly, Defendant argues that the Court wrongly criticized the PB Report for "failing to consider the results of Rhino's actual trading strategy versus a buy-and-hold strategy" because the September Order "cites no authority for the proposition that such an analysis is required." (Def.'s Mem. In Supp. p. 19.) The portion of the September Order cited by the Defendant criticized the PB Report because Prowse and Beloreshki chose to opine on whether "simply holding the Debentures until they were converted into Sedona's common shares" would have been "an optimal trading strategy," (PB Report ¶ 27), and they chose to opine on whether Badian had an incentive to "reduce [his] overall long positions . . . whenever possible," (PB Report ¶ 30), but Prowse and Beloreshki failed to provide a comparison of one strategy (reducing Badian's overall long position) against the other (not reducing his long position), to demonstrate where the greater incentives ultimately lie. Defendant's post hoc citations to portions of the Hillion-Vermillion article stating that the stock price of future-priced securities' issuers overwhelmingly decline in the first year following the issuance of the securities are inadequate to fill this gap and inadequate, by themselves, to support a finding that Badian had an incentive to reduce his position "whenever possible."

Defendant's motion to reconsider preclusion of expert testimony premised on section II of the PB Report is denied.

2.   Section IV of the Prowse and Beloreshki Report

Defendant argues that the Court wrongly precluded section IV of the PB Report when it found that Defendant failed to meet his burden of showing, by a preponderance of the evidence, that the opinions in section IV were based on reliable methods applied reliably to the

facts of this case and with the same level of intellectual rigor that characterizes the practice of an expert in this field. In his motion papers, Badian has proffered additional evidence of the experts' use of standard methodology, and pointed out portions of previously-submitted supplemental reports in which certain issues the Court had perceived as overlooked had been addressed. Based on these proffers and for the reasons summarized below, the Court grants Badian's reconsideration motion as to the admissibility of section IV of the PB Report and, upon reconsideration, denies the S.E.C.'s motion in limine to the extent it sought preclusion of section IV.

In the September Order, the Court found that section IV of the PB Report should be precluded because it was not based on reliable principles and methods applied reliably to the facts of this case. Specifically, the Court faulted section IV's regression analysis on the ground that the period of Badian's alleged manipulative trading was included within the regression's estimation window, which distorts the estimation of the normal return. (September Order p. 11-13.) In his memorandum of law in support of the instant motion, Defendant clarifies that Prowse and Beloreshki chose their estimation windows in accordance with accepted principles found in the relevant academic literature and, further, that Prowse and Beloreshki used "flags"—that is, dummy variables—to prevent days of alleged manipulative trading from being incorporated into the estimation window, which is a methodology that is also supported by the relevant academic literature. See Johan Gelbach et al., Valid Inference in Single-Firm, Single-Event Studies Used in Scholarship and Securities Litigation: A Research Agenda, Law & Economics Colloquium p.1 (2009).[2] The S.E.C. does not now dispute that Prowse and Beloreshki used dummy variables in connection with Badian's trading days during the estimation window, but argues that the flags

---

2

were used unreliably to "skew[] the results toward the null." (Pl.'s Mem. in Opp. p. 11.)

In the September Order, the Court cited two other apparent deficiencies in the methodology in section IV of the PB Report. The Court faulted two tests employed by Prowse and Beloreshki because they failed to account for trading volume, and the Court faulted the PB Report for failing to distinguish between normal trades and so-called "wash trades." In his motion for reconsideration, Defendant points out that, although the tests cited by the PB Report and criticized in this Court's original order do not measure trade volume, other tests attached as exhibits to the PB Report and the Sur-Rebuttal Report did analyze trade volume. Defendant also proffers that an analysis of potential wash trades is not necessary because the Sur-Rebuttal Report demonstrates that the alleged wash trades are inconsistent with the S.E.C.'s theory of the case.

Upon reconsideration of the record and in light of the parties' briefing on this motion, the Court concludes that Badian has met his burden of demonstrating by a preponderance of the evidence that the opinions expressed in section IV of the PB Report are based on reliable principles and methods reliably applied. The Court's prior conclusions to the contrary were erroneous. While the Court recognizes that there are sharp disputes regarding the application of the principles and methods in particular, those arguments go to the weight, and do not preclude the admissibility of, the opinions. Accordingly, the S.E.C.'s motion to preclude the opinions expressed in section IV of the PB Report is now denied.

The Steve Thel Report

The Court excluded the expert testimony of Steve Thel because it was replete with inadmissible generalized statements of law, legal conclusions and conclusory statements regarding Badian's motivation, as well as Thel's opinions regarding non-technical words and

phrases like "clobber" and "unbridled levels of aggression." Defendant has not shown any new developments in the law, evidentiary material that was not previously available or clear error in the Court's original analysis of Thel's testimony. Accordingly, the motion to reconsider the preclusion of Thel's testimony is denied.

### Conclusion

For the foregoing reasons, the Court hereby amends its September 28, 2011, Memorandum Order so that the first sentence in footnote 5 reads, in pertinent part, as follows: ". . . all of the witnesses whose declarations the SEC has now proffered . . . ."

Badian's motion for reconsideration of the decisions set forth in the September 28, 2011, Memorandum Order is denied, except with respect to opinions relating to section IV of the PB Report. As to section IV of the report, the motion for reconsideration is granted and, upon reconsideration, the September 28, 2011, Memorandum Order is vacated insofar as it granted the S.E.C.'s motion to preclude testimony relating to the opinions in section IV of the PB Report. Testimony as to such opinions will be permitted.

This Order resolves docket entry number 278.

SO ORDERED.

Dated: New York, New York
       June 20, 2012

_____
LAURA TAYLOR SWAIN
United States District Judge